## SWIRSKY v VAN SWERINGEN CO

Ohio Appeals, 8th Dist, Cuyahoga Co
No 10513. Decided June 30, 1930

Cline & Patterson; Leighly, Halle, Haber & Berick, all of Cleveland, for Swirsky.

Baker, Hostetler & Sidlo; Garfield, Cross, MacGregor, Daoust & Baldwin; Boyd, Brooks & Wickham, all of Cleveland, for VanSweringen Co.

VICKERY, PJ.

Now this is the basis on which the judg-ment against Swirsky was rendered as an assumer of these mortgages to the Van Sweringens and others. There can be no question, of course, but that one who as-sumes and promises to pay a mortgage that is upon property which was purchased by him becomes liable personally for the obli-gation thus assumed, and upon a failure of the property to sell for enough money to pay the obligation, a deficiency judgment may be obtained against him; and this was the basis, of course, for the judgment against Swirsky, but in order to be liable a man must voluntarily and knowingly as-sume that liability.

There have been several attempts, in our court, within the last year or so to hold a purchaser of real estate liable for a defi-ciency judgment on real estate purchased by him upon which there was a mort-gage, even though there was no as-sumption of the mortgage. In every instance, in such cases, we have uni-formly held that no such judgment could be obtained, or if obtained, could stand; but where a man has voluntarily and knowingly assumed a promise to pay a mortgage upon property he, of course, is liable for any deficiency that may result by reason of the property not bringing the amount of the mortgage upon it.

Now in the instant case, did Swirsky in-tend or did he not intend to become per-sonally liable for this obligation? All the evidence in this record shows that he did not. He was only one of a group of men that were to form a corporation, and the corporation was to be the purchaser. A man might willingly become a member of a group to form a corporation who would as-sume the mortgage and not be willing to assume it personally himself. In that event the corporation, if legally formed, would become responsible for the deficit, but no individual member of the corpor-ation would thus become liable.

Now the record in this case shows with-out any equivocation or doubt that the en-tire understanding between all these groups of men and the various corporations owned or controlled by different groups knew that Swirsky was not personally to assume this obligation, that he was not personally to become the purchaser of this property. It is true he might have been the principal backer of the group of men who were, as a corporation, to become the owner of this property, but that he himself was to become the owner there is not a scintilla of evi-dence. On the contrary, there is the escrow agreement made out by Mr. Daoust and submitted to the escrow agent which con-tained the instructions and terms, the as-sumption of the mortgage and everything, and it contained the clause that the grantee was to be a corporation not then formed.

Apparently Suggs Garber acting upon his own initiative,—whether with corrupt motives or not, it does not make any dif-ference,—shortly without the knowledge, so far as the record shows, of Swirsky, con-veyed the information to the escrow agent that, inasmuch as they had to have some name for the deed, for apparently Garber was anxious to get the matter cleaned up, the name Swirsky should be inserted and inasmuch as he was acting for all the par-ties and had been in communication with the escrow agent, the escrow agent took his word, as he naturally would, and put the name of Swirsky in the deed as grantee, and in a manner violated the escrow in-structions given by Mr. Daoust, for in them he mentioned as grantee a corporation to be formed.

Now if a liability of hundreds of thou-sands of dollars can be imposed upon a man by substituting his name for "a cor-poration to be formed" in a deed as grantee without his knowledge or consent, then dealing in real estate or having trans-actions in regard to real estate must be handled with much care, especially where

there is such a mixture of good and bad faith and other things and various corporations as are involved in this complicated transaction.

It is argued that this real estate stood in the name of Swirsky from the time of the making of the deed for fourteen months. I have already alluded to that. Suggs Garber after having, without authority, suggested the name of Swirsky as grantee,—whether with a purpose of sticking Swirsky or not, becomes immaterial,—took the deed to the recorder and he took the deed from the recorder, and that the title had been transferred to Swirsky never was called to Swirsky's attention and he never knew about it until the 27th of February when, as already stated, the corporation attempted to transfer a parcel of the property. I allude to this because had Swirsky known that this deed stood in his name, that the property had been transferred to him and he said nothing during all of this time, it would be of potent force to show that he acquiesced in the transaction and would be estopped perhaps from afterwards disputing the matter; but as soon as he learned that the title was in his name, he immediately transferred it to the corporation which he supposed had been formed.

So the doctrine of estoppel will not apply nor is there anything in this record so far as we can learn whereby Swirsky ever gave his consent that his name should be used as the grantee. Then we have the mere fact that the land had been transferred to him as grantee by deed which contained assumption of mortgages existing upon it as the sole basis for the right to maintain this judgment against him; and I assert confidently that, in order to hold a man upon a contract he must knowingly be a party to that contract or must have acquiesced as being a beneficiary under the contract to such an extent that he would be estopped from disputing afterwards that it was in his name; and neither of those things exist in the present case. Swirsky did not buy this property. He had no intention of buying the property. He did not assume this mortgage. He had no intention of assuming the mortgage, and all the elements of a contract which would make him liable being absent, there is no basis for the judgment against him for the deficiency over and above the amount received from the sale of the property, and

the Common Pleas Court was wrong and the jury was wrong in bringing a verdict against him, for it is manifestly and clearly against the weight of the evidence and is contrary to law, and for that reason the verdict and judgment based thereon against Swirsky in favor of the Van Sweringens and other mortgagees for the deficiency over and above the value of the property as obtained through a mortgage sale is reversed, and the cause remanded to the Common Pleas Court for a new trial.

There is just one other question and that is raised by the receiver for the Union Mortgage Company; that is on a motion to dismiss the error proceedings. It seems that the motion for a new trial was made before the journal entry was entered upon the docket. The judgment had been made and the trial court, one of the out of town judges had written that he had overruled the motion for a new trial, and the attorneys acting upon that information filed their petition in error. Subsequently, notwithstanding the letter which the judge had written, the entry was afterwards made and, therefore, the petition in error was filed before the motion for a new trial had been overruled, and a motion to dismiss the proceedings in error were filed upon that basis.

This matter was called to the attention of the trial judge and a motion was made for a nunc pro tunc order to make the journals conform to the actual fact and the judge having full knowledge of the matter granted the nunc pro tunc order making the overruling of the motion ante-date the filing of the petition in error and an amended transcript was filed setting forth this matter. So the motion, however grave it appeared in the first instance, has been mitigated and done away with by the subsequent proceedings of the Common Pleas Judge for there can be no doubt but that a nunc pro tunc order can be granted to show what was actually done, if it was done, and that is only in the interest of the administration of justice.

Mr. Swirsky should not be deprived of his right to prosecute error because relying upon the communication from the judge that the motion had been overruled, he filed his petition in error and the bill of exceptions apparently too soon while as a matter of fact he filed them within proper time. So the motion to dismiss the petition in error will be overruled.

Sullivan and Levine, JJ, concur.